758 F.2d 653
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WELFORD HUDGINS, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-1042
 United States Court of Appeals, Sixth Circuit.
 2/11/85
 
 Appeal from the United States District Court for the Eastern District of Michigan, Southern Division
 Before: KENNEDY and CONTIE, Circuit Judges; and HILLMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Claiment appeals the District Court's judgment affirming the Secretary's denial of disability benefits.
 
 
 2
 The District Court found that there was substantial evidence to support the Secretary's determination that claimant had failed to establish that he was disabled before the expiration of his insured status on March 31, 1980. The Secretary had found that claimant was able to perform sedentary work through that date.
 
 
 3
 Claimant suffers from a number of serious ailments. He has a long history of hypertension which has been reasonably controlled. In 1973 his right kidney was removed. In February 1979 an electrocardiogram showed that he had incurred inferolateral myocardial damage since his 1978 tracing. In November 1979 an emergency catheterization at Henry Ford Hospital revealed that he had a Type I aneurysm of the thoracic artery as well as aneurysm and ulceration of the ascending and descending aorta. Bypass surgery was performed on the aortoiliac artery, the right common femoral artery, and the iliac artery. The repair of the thoracic aneurysm was deferred. Claimant was advised that surgery to repair this condition carried a 20% to 25% mortality rate. Claimant developed a foot drop, the exact cause of which was not determined. He was seen regularly for postoperative care.
 
 
 4
 In finding that claimant was not disabled, the ALJ seems to have overlooked the thoracic aneurysm. He found only that claimant is impaired by the abdominal aortic surgery and residual foot drop which precludes strenuous work. An aneurysm such as claiment's is an impairment listed in the Listing of Impairments in 20 C.F.R. Secs. 404.1501-404.1599, Appendix I, section 4.11 (1984):
 
 
 5
 Aneurysm of aorta or major branches (demonstrated by roentgenographic evidence). With:
 
 
 6
 A. Acute or chronic dissection not controlled by prescribed medical or surgical treatment . . ..
 
 
 7
 20 C.F.R. Sec. 404.1522 provides that the impairments listed in Appendix 1 'are considered severe enough to prevent a person from doing any gainful activity.'
 
 
 8
 The descending thoracic aorta is one of the two major branches of the descending aorta, the other being the abdominal aorta. Only claimant's abdominal descending aorta was repaired in the 1979 surgery. The report of the 1982 admission to Harper Grace Hospital confirms that the aneurysm is chronic and that it has not been controlled by medical treatment. If claimant had such an aneurysm before March 31, 1980, when his insured status expired, it is clear that he is entitled to benefits.
 
 
 9
 Most of the medical evidence in this case consists of reports submitted after March 31, 1980. The District Court held that there was substantial evidence to support a finding that claimant was not disabled even if these later reports were considered to 'relate back' to March 1980.
 
 
 10
 Dr. Arturo V. Pascual, claimant's attending physician at Henry Ford Hospital, provided reports on July 23, 1980 and July 31, 1980. In his letter of July 23, 1980 he noted:
 
 
 11
 Please be advised that Mr. Hudgins is presently under my care with a standing diagnoses of severe hypertension complicated by Type I thoracic dissecting aneursym with status post abdominal aneursym repair, probable post-operative lesion of the anterior femoral cutaneous nerve of the thing and mild renal failure. Mr. Hudgins' prognosis is guarded, and he is presently completely and totally disabled.
 
 
 12
 On July 31, 1980 Dr. Pascual completed the physical capacities evaluation. There he diagnosed 'hypertension, hypertensive heart disease, renal failure, Type I aortic dissecting aneurysm.' Dr. Pascual stated that these conditions completely disabled claimant.
 
 
 13
 Claimant was examined by Dr. N. Vicencio on August 21, 1980 at the request of the Secretary. Dr. Vicencio did not have the benefit of claimant's records, and did not mention the thoracic aneursym because it was not reported by the claimant, who merely said he had some kind of heart problem. Dr. Vicencio commented that the records would be helpful to determine what kind of cardiac problem the claimant has. Dr. Vicencio found that claimant suffered from chronic obstructive pulmonary disease and status post abdominal aortic bypass graft. Because Dr. Vicencio did not have the critical information about claimant's unrepaired aneursym and did not perform tests that necessarily would have discovered such an aneurysm, Dr. Vicencio's report does not constitute substantial evidence that a disabling aneurysm did not exist.
 
 
 14
 The District Court also found that Dr. Pascual's reports did not 'relate back' so as to indicate claimant's condition as of the expiration of his insured status. However, the hospital discharge summary following claimant's 1979 surgery indicates that as of the discharge date, December 31, 1979, claimant had a Type I thoracic aneursym. There is no evidence that this condition was corrected or controlled at any later time. There is no substantial evidence in the record to refute the conclusion that claimant was subject to a listed impairment prior to the expiration of his insured status.
 
 
 15
 The Secretary suggests that claimant refused surgery that would have corrected his condition. See 20 C.F.R. Sec. 404.1530. The record indicates only that the thoracic surgery department at Henry Ford Hospital recommended immediate surgery, but was overruled by Dr. ascual who felt it better to wait until claimant recovered from the original surgery. There is no evidence that a recommendation for surgery was made at any later time by the attending physician. Even if surgery had been recommended, it would not have been unreasonable for claimant to refuse surgery with a 20% to 25% mortality rate. 20 C.F.R. Sec. 404.1530(c)(4).
 
 
 16
 Accordingly, the judgment of the District Court is reversed and the case is remanded with directions to remand to the Secretary for an award of benefits with an onset date commencing November of 1979.
 
 
 
 *
 Honorable Douglas W. Hillman, United States District Court for the Western District of Michigan, sitting by designation